# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| GARY ANTHONY CARTER, JR., ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | CV422-288 | |
| ) | | |
| EFFINGHAM COUNTY ) | | |
| SHERIFF'S DEPT., *et al.*, ) | | |
| ) | | |
| Defendants. ) | | |

# ORDER

*Pro se* plaintiff Gary Anthony Carter, Jr. has filed this 42 U.S.C. § 1983 case alleging various constitutional violations arising during his detention by the Effingham County Sheriff's Department. *See, e.g.,* doc. 1 at 5-8. The Court previously granted him leave to proceed *in forma pauperis*, doc. 4, and he has returned the required forms, docs. 5 & 6. The Court, therefore, proceeds to screen his Complaint pursuant to 28 U.S.C. § 1915A.[1]

---

[1] Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).

Carter alleges that in September, 2022 his wife called 911 because he was threatening to kill himself. *See* doc. 1 at 5. Effingham County Sheriff's deputies arrived at his residence. *Id.* He was, however, "across the street[,]" waiting for an "ambulance to arrive before [he] made [himself] and [his] location known." *Id.* Instead of an ambulance, more deputies arrived, in tactical gear, and entered the residence. *Id.* Although there is no express allegation, it does not appear that Carter had any contact with law enforcement at that time. *See id.* Approximately four days later, Carter alleges that he turned himself in to "a Newington, Ga. police office."[2] *Id.* at 6. He was taken to the Effingham County Sheriff's Office. *Id.*

Carter alleges that he informed defendant Deputy Moore that he was having suicidal thoughts when he was taken "into booking." Doc. 1 at 6. He was then "placed . . . into a rubber cell." *Id.* After an unexplained delay, during which Carter "slept," "the booking process" began. *Id.* Carter was taken before a judicial officer at some point, and

---

[2] The Court notes that Newington, Georgia is located in Screven County, not Effingham County. The Complaint suggests, but does not clearly allege, that there were warrants for Carter's arrest in Effingham County. *See* doc. 1 at 6. Those warrants might explain why Carter was transported from Newington to the Effingham County Sheriff's Office.

2

was ordered held without bond. *Id.* Carter "began smashing [his] head from [his] depression," and he was returned to the "rubber cell." *Id.* While in that cell he "smashed [his] head into a floor grate," resulting in a bleeding wound or cut. *Id.* He "was rushed to medical," where his wound was bandaged. *Id.* He was then "sent back to booking and booking was complete." *Id.*

During the booking process, Carter continued to express "concerns" about his mental state, but he does not identify to whom. *See* doc. 1 at 6. After booking, he was placed in a cell where "deputies had left a noose . . . from a[n] inmate hours before trying to hang himself." *Id.* He does not allege how long he was detained in the cell, but he was removed at 7:00 p.m. on the same day. *Id.* at 6-7. He alleges that his clothing was taken, officers "g[a]ve [him] a security blank [sic], then had [him] placed into the rubber cell." *Id.* at 7.

The next morning, he was taken to an appointment with "a counselor," to whom he "expressed [his] feelings of feeling very unsafe . . . at Effingham County Sheriff's Office." Doc. 1 at 7. The counselor recommended that he "be placed on 24 hour suicide watch for the next 7 days." *Id.* He alleges that he was held "naked," but "with a blanket," for

3

seven days and had to sleep "on the floor." *Id.* At the end of the week, Defendant Mock took him back to see the counselor. *Id.* "He stated that if [Carter] wanted [his] cloth[e]s back and to be treat[ed] normal[ly], that [he] better not say anything about hurting [himself]." *Id.* He met with the counselor and was removed from suicide watch. *Id.* at 7-8.

He alleges that, as a result of the treatment described, he "will be in a state of post[-]traumatic stress disorder for many years." Doc. 1 at 8. He seeks monetary damages of $1,800,000.00.

## I. Improper Defendants

Carter names the Effingham County Sheriff's Department as a defendant. *See* doc. 1 at 2. However, sheriffs' departments are not proper parties because they are not legal entities capable of being sued. *See, e.g., Wooten v. Bohannon*, 2021 WL 5751440, at *2 (S.D. Ga. Nov. 10, 2021) (citing *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995)) (recommending dismissal of claims against county sheriff's department because department was "not a 'person' subject to suit under § 1983."). Accordingly, all claims against the Effingham County Sheriff's

Department for alleged violations of Carter's federal constitutional rights are **DISMISSED**.

Carter also names "Wellpath," as a defendant. *See* doc. 1 at 4. Other than its listing among the defendants, "Wellpath" is never mentioned again in the Complaint. *See generally id.* Although it is not expressly alleged, the Court infers that it is a private contractor responsible for providing healthcare services to inmates. Courts have recognized that "[a] private entity providing medical services pursuant to a contract . . . is only liable under § 1983 where it employs a custom or policy that results in deliberate indifference to an inmate's serious medical need." *Brown v. Bell*, 2022 WL 779771, at *3 (N.D. Ala. Mar. 14, 2022) (citing, *inter alia.*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *see also Denham v. Corizon Health, Inc.*, 675 F. App'x 935, 940 (11th Cir. 2017) ("A private entity . . . is subject to liability under section 1983 when it performs a function traditionally within the exclusive prerogative of the state, such as contracting . . . to provide medical services to inmates . . . ." (internal quotations and citation omitted)); *Massey v. Montgomery Cnty. Det. Facility*, 646 F. App'x 777, 780 (11th Cir. 2016) ("*Monell*'s 'policy or custom' requirement . . . applies in suits

5

against private entities performing functions traditionally within the exclusive prerogative of the state, such as the provision of medical care to inmates." (internal quotations and citations omitted)).  Carter has not alleged any "custom or policy" sufficient to even suggest a claim against Wellpath.  It is, therefore, **DISMISSED**.

Finally, the Clerk has identified several other defendants, "E.S.C.O.," and "Medical," that appear to be based on ambiguous references in the Complaint.  *See* doc. 1 at 1, 4.  The reference to "E.S.C.O.," which the Court infers is an abbreviation of Effingham County Sheriff's Office, is either redundant or merely indicates defendant Sergeant Lockett's employer.  *See id.* at 1.  "Medical" may indicate that Carter asserts some claims against unidentified medical staff, designates the capacity in which defendant Mock is employed, or is somehow related to "Wellpath."  *See id.* at 4.  Carter's factual allegations provide no clarification of either of those two entities.  Since § 1983 liability is limited to deprivation of constitutional rights by "persons," any claim Carter asserts against "E.C.S.O." and "Medical" are **DISMISSED**.

## II. Claims arising prior to incarceration

As discussed above, Carter's Complaint includes allegations concerning law enforcement's response to his wife's 911 call about his suicidal ideation and behavior. *See* doc. 1 at 5. He alleges that his wife informed law enforcement that he "had a gun to [his] head and we needed help." *Id.* He also alleges that he left before any officers arrived but observed them from "across the street." *Id.* He also alleges that some officers entered his home in tactical gear, *i.e.,* "full armour [sic] and fire arms." *Id.* He later refers to "Effingham County Sheriff[']s Office reporting to the call from [his] wife . . . with such disregard for [his] life," as a basis for liability. *See id.* at 8. The Court is, however, unable to discern *any* constitutional violation implied by Carter's pre-incarceration allegations. Even charitably construed, he alleges, at most, that officers exercised excessive caution in response to a report of an armed suicidal individual. Those allegations do not plausibly implicate any of his constitutional rights, much less allege a violation of them. *Cf. Giddens v. Brooks Cnty., Ga.*, 2022 WL 836273, at *3 (11th Cir. Mar. 21, 2022) ("Despite [the] leniency toward *pro se* litigants . . . courts may not . . . rewrite an otherwise deficient pleading in order to sustain an action.").

To the extent that Carter asserts any claim arising from those events, he must clarify those claims in the amendment discussed below.

### III. Medical Care Claims

Carter characterizes his claims as violations of the Eighth Amendment. *See* doc. 1 at 5. Liberally construed, his Complaint might allege that the Eighth Amendment was violated because some defendant failed to provide him adequate medical care. To offend the Eighth Amendment,[3] a government official must display "deliberate indifference to the serious medical needs of prisoners . . ." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This requires that (1) the prisoner suffered a sufficiently serious medical need; (2) to which the defendants were deliberately indifferent; (3) resulting in an injury. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). Whether a serious medical need existed is an objective standard. *Milton v. Turner*, 445 F. App'x 159, 161-62 (11th Cir. 2011). However, whether defendants were deliberately indifferent is

---

[3] Although it is not entirely clear, Carter's allegations suggest he is a pretrial detainee. As a pretrial detainee, any medical-care claim is technically governed by the Fourteenth Amendment, not the Eighth. *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). "However, the standards under the Fourteenth Amendment are identical to those under the Eighth." *Id.* (citation omitted); *see also Thomas v. Bradshaw*, 2022 WL 333244, at *4 (11th Cir. Feb. 4, 2022) (same).

8

subjective and each defendant is "judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 33 F.3d 1325, 1331 (11th Cir. 2008). To allege deliberate indifference, a plaintiff must show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Youmans v. Gagnon*, 62 F.3d 557, 564 (11th Cir. 2010). Moreover, a prisoner's disagreement with the type of treatment he receives is insufficient to allege deliberate indifference. *See, e.g., Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985). Even if the treatment provided was negligent, that is not sufficient to support a § 1983 claim. *See, e.g., Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing *Estelle*, 429 U.S. at 106).

Carter alleges two conditions that, for screening purposes, are sufficient to allege objectively serious medical needs, his suicidal ideation and the bleeding cut he suffered to his head. *See, e.g., Moore v. Allen*, 2020 WL 247308, at *3 (S.D. Ga. Jan. 15, 2020) (citing *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985); *Jacoby v. Baldwin Cnty.*, 596 F. App'x 757, 763 (11th Cir. 2014)) ("Plaintiff's suicidal ideation and . . . arm wound could both constitute medical needs so obvious that even a lay person would recognize the necessity for medical attention.").

However, Carter never alleges that any defendant was indifferent to his expressions of suicidal ideation or his head wound. On the contrary, he expressly alleges that he was provided virtually immediate medical attention for both conditions. *See* doc. 1 at 6-7. The Court is unable to discern an allegation that any defendant "disregarded" either condition. To the extent that Carter alleges that the treatment he received was, somehow, inadequate, he must clarify how that allegation is more than his mere disagreement with the treatment provided. As discussed below, he will, therefore, have an opportunity to amend his Complaint.

## IV. Conditions of Confinement

Carter's assertion of Eighth Amendment violations might also implicate a claim concerning the conditions of his confinement. Claims that prison conditions violate the Eighth Amendment, whether immediately or by creating an unreasonable risk, require the allegation of both an objectively serious condition and a defendant's deliberate indifference to that condition.[4] *See, e.g., Brooks v. Warden*, 800 F.3d

---

[4] "The Eighth Amendment prohibits the infliction of cruel and unusual punishment. [Cit.] The Eighth Amendment's prohibition on conditions of confinement that amount to cruel and unusual punishment also applies to pre-trial detainees through the Fourteenth Amendment's due process clause." *Bennett v. Chitwood*, 519 F. App'x 569,

10

1295, 1301 (11th Cir. 2015) (claim based on risk of future harm requires objective showing of "substantial risk of serious harm," "the defendants' deliberate indifference to that risk," and causation); *Thomas v. Bryant*, 614 F.3d 1288, 1303-04 (11th Cir. 2010) (discussing "two-prong showing" required for Eighth Amendment claims challenging conditions of confinement); *Ellis v. Pierce Cnty, Ga.*, 415 F. App'x 215, 217 (11th Cir. 2011) ("A pretrial detainee in a conditions-of-confinement suit must satisfy both an objective and a subjective inquiry into the conduct of the defendant prison officials."). "[O]nly those deprivations denying the minimal civilized measure of life's necessities, [cit.] are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal quotation marks and citations omitted).

The Court cannot discern any allegation of a condition sufficiently serious to violate the Eighth Amendment in Carter's Complaint. The conditions he alleges related to his detention on suicide watch, including being deprived of clothes, although provided with a blanket, and being

---

573 (11th Cir. 2013) (citing *Wilson v. Blankenship*, 163 F.3d 1284, 1291 (11th Cir. 1998); *Hamm*, 774 F.2d at 1573-74.).

forced to sleep on the floor do not allege sufficiently serious conditions. *See O'Connor v. Kelley*, 2014 WL 1133522, at *15 (N.D. Fla. Mar. 21, 2014) ("Plaintiff's allegations that, while on strip-cell status for either days or 'weeks,' he was given only a 'suicide shroud' to wear; was subjected to cold conditions; denied a mattress, blanket, cup, and hygiene items; slept stooping, sitting, or lying on a cold floor fail to satisfy" the objective component of an Eighth Amendment claim); *see also, e.g., Winders v. Boyd*, 2010 WL 558361, at *3 (E.D. Ark. Feb. 12, 2010) (plaintiff's allegation that "for four days while he was on suicide watch, he did not have a mattress or blanket," did not rise to the level of a constitutional violation). Even outside the context of a suicide watch, being deprived of clothing and forced to sleep on the floor for seven days do not violate the Eighth Amendment. *See, e.g., Sifford v. Hall*, 2016 WL 4578336, at *6 (S.D. Ga. Aug. 31, 2016) (Baker, M.J.) ("Inmates have no absolute right to bedding or clothes under the Eighth Amendment," and collecting cases).

To the extent that Carter alleges that his confinement in a cell which contained a noose from another prisoner's suicide attempt violated the Eighth Amendment, he does not allege any defendant's deliberate

indifference. The Court is skeptical that the presence of a noose in the cell where Carter was detained is sufficiently serious to satisfy the objective component of an Eighth Amendment claim.[5] Regardless, Carter does not allege that any defendant was aware that the noose was in the cell when he was placed there. *See* doc. 1 at 6-7. He expressly alleges that, when officers discovered the condition, "Sergeant Lockett became very upset about who allowed [Carter] to be . . . taken to a cell . . . where a noose had been left." *Id.* at 7. To the extent that Carter alleges that any defendant was aware of the noose before he was removed from the cell, he must amend his Complaint to allege it.

---

[5] Carter's allegations concerning the noose are not entirely clear. First, it is not clear whether the noose was immediately visible. *See* doc. 1 at 6. Carter does not allege that he was immediately aware of the noose when he entered the cell. *Id.* He alleges that he and the other inmate confined to the cell were surprised that he was placed in the cell with the noose "[w]ithin a few minutes of talking," to the other inmate. *Id.* Second, it is not clear how long he was detained in that cell. *See id.* at 6-7 (alleging that he was removed from the cell at 7:00 p.m. on the same day he was placed in it). Given the ambiguities in the circumstances of the noose, the Court assumes that the circumstances alleged could rise to the level of an Eighth Amendment violation. However, to the extent that Carter seeks to amend this claim, as discussed below, he must clarify the objective seriousness of the presence of the noose, in addition to addressing the lack of any allegation that any defendant was subjectively indifferent to that condition.

## V.     Compensatory Damages

It is also unclear whether Carter can recover compensatory damages based on the sole alleged injury, "post-traumatic stress disorder." *See* doc. 1 at 9.  The PLRA precludes all civil actions "brought by a prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ."   42 U.S.C. § 1997e(e).   So, "an incarcerated plaintiff cannot recover either compensatory or punitive damages for constitutional violations unless he can demonstrate a (more than de minimis) physical injury." *Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015).  Nominal damages (often one dollar) are, however, available to vindicate constitutional rights violated without physical injury. *See id.* at 1308.  Courts have held that emotional injury, including "post traumatic stress disorder," is insufficient to meet the physical-injury requirement of § 1997e(e). *See, e.g., Johnson v. Stirling*, 2022 WL 682396, at *3 (D.S.C. Mar. 8, 2022) ("Plaintiff lists his injuries as emotional distress, mental anguish, and post-traumatic stress disorder but does not allege physical injury."); *Antrobus v. City of New York*, 2014 WL 1285648, at *6 (S.D.N.Y. Mar. 27, 2014) (Plaintiff who

failed to connect his alleged physical injuries with the defendant's alleged wrongdoing was "barred from recovering damages for mental or emotional injuries."). To the extent that Carter seeks compensatory damages, therefore, and assuming that he can amend his Complaint to allege some constitutional violation, he must identify a physical injury arising from that violation.

## VI. Conclusion

In summary, Carter's claims against the Effingham County Sheriff's Office, "Wellpath," "E.C.S.O.," and "Medical" are **DISMISSED**. Doc. 1, in part. Although his claims alleging violations of his Eighth Amendment rights and seeking compensatory damages fail to state a claim, he is entitled to an opportunity to amend. *See, e.g., Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015) ("[W]hen a more carefully drafted complaint might state a claim, a district court should give a *pro se* plaintiff at least one chance to amend the complaint before the court dismisses the action."). No later than January 20, 2022, Carter is **DIRECTED** to submit an Amended Complaint. To facilitate his preparation of the Amended Complaint, the Clerk is **DIRECTED** to send him a blank Form Pro Se 14 (Complaint for Violation of Civil Rights

(Prisoner)). Carter is advised that his amended complaint will supersede the current operative complaint and therefore must be complete in itself. *See Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982). Carter is further advised that failure to timely submit his amended complaint may result in a recommendation that this case be dismissed for failure to obey a court order or failure to prosecute. *See* Fed. R. Civ. P. 41(b).

### VII. Filing Fee

Finally, the Court must assess Carter's filing fee. *See* 28 U.S.C. § 1915(b). Plaintiff's prisoner trust fund account statement reflects $190.00 in average monthly balance. Doc. 6 at 1. Based upon his furnished information, he owes an initial partial filing fee of $38.00. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). His account custodian shall set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has been paid in full. In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information

concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.[6]

**SO ORDERED,** this 21st day of December, 2022.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[6] The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately, as this payment directive is nondispositive within the meaning of Fed. R. Civ. P. 72(a), so no Rule 72(b) adoption is required. In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.